1
2
3
4
5
6
7
8            **IN THE UNITED STATES DISTRICT COURT**
9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11   SEQUOIA FORESTKEEPER,                    CASE NO. CV F 09-392 LJO JLT
12                                            **O R D E R   O N   P L A I N T I F F ' S**
                                             **RECONSIDERATION MOTION** (Doc. 86)
13                         Plaintiff,
              vs.
14
     UNITED STATES FOREST SERVICE,
15   et al.,
16                         Defendants.
17   _____/
18                        **INTRODUCTION**

19        Plaintiff Sequoia Forestkeeper moves for reconsideration of this Court's December 3, 2010 Order

20   on Cross-Motions for Summary Judgment ("MSJ Order").  Sequoia Forestkeeper argues that this Court

21   made errors of fact and law to conclude that Fay Creek is not a "navigable water" or a "fishery."  In

22   addition, Sequoia Forestkeeper contends that this Court erred by refusing to consider supporting

23   declarations attached to Sequoia Forestkeeper's motion and other documents and by denying injunctive

24   relief.  Based on a change in the controlling law and defendant United States Forest Service's ("the

25   USFS"s) position on the law, this Court finds that reconsideration of the "navigable water" issue is

26   warranted.  Having reconsidered whether Fay Creek is a navigable water, this Court MODIFIES its MSJ

27   Order in part and GRANTS summary judgment in favor of Sequoia Forestkeeper on this issue.  This

28   Court further GRANTS reconsideration of Sequoia Forestkeeper's request for injunctive relief, SETS

                                            1

ASIDES the administrative agency action, and REMANDS this issue to the administrative agency for further proceedings.  As to all other issues, this Court DENIES Sequoia Forestkeeper's reconsideration motion.

**BACKGROUND**

Sequoia Forestkeeper initiated this action to seek judicial review of the USFS's[1] re-issuance of a Special Use Permit ("SUP") to Robert Sellers and Quarter Circle Five Ranch (collectively "Sellers") in 2003, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§701-706.  The SUP authorizes Sellers to use a water diversion that diverts water flowing from Fay Creek via a dam located within the boundaries of the Sequoia National Forest for private use ("diversion").  Sequoia Forestkeeper argued that by re-issuing the SUP, the USFS violated: (1) the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§4321-4347, for failure to prepare an Environmental Assessment ("EA") or an Environmental Impact Statement ("EIS") despite warnings from the California Department of Fish and Game, Sequoia Forestkeeper, and downstream landowners that the SUP would result in significant harm to the environment (first cause of action); (2) NEPA, for failure to take a "hard look" at the environmental impacts of the re-issuance; (3) the National Forest Management Act ("NFMA"), 16 U.S.C. §§1600-1687, because the SUP fails to comply with California resource and environmental law (third cause of action); and (4) NFMA, because the SUP fails to comply with Sequoia National Forest Land and Resource Management Plan ("Forest Plan"), which requires compliance with the water quality standards of the Clean Water Act, 33 U.S.C. §§1251-1387.[2]

In its MSJ Order, the Court found that the USFS violated NEPA by failing to consider requests to include a minimum bypass flow restriction in the SUP or to require monitoring devices to be installed. This Court rejected Sequoia Forestkeeper's claims on all other grounds.  Accordingly, this Court granted in part and denied in part the parties' cross-summary judgment motions and remanded this action to the USFS for further consideration.

---

[1] Defendants are the  United States Forest Service, Tina Terrell, in her official capacity as Forest Supervisor for the Sequoia National Forest ("Ms. Terrell"), and Abigail R Kimbell, in her official capacity as Chief of the United States Forest Service (collectively "USFS").

[2] Sequoia Forestkeeper withdrew its fifth and sixth causes of action in its motion for summary judgment.

2

1   Sequoia Forestkeeper moves for reconsideration of this Court's MSJ Order on the following

2   issues: (1) whether this Court erred in concluding that because Fay Creek was not a "navigable water,"

3   the USFS did not violate the NFMA by failing to require a Section 401 Certificate; (2) whether this

4   Court erred in concluding that Fay Creek did not constitute a "fishery"; (3) whether this Court erred by

5   failing to consider Sequoia Forestkeeper's extra-record evidence; and (4) whether this Court erred in

6   denying Sequoia Forestkeeper's request for injunctive relief.  In response, USFS concedes that its legal

7   position on the law as it pertains to the "navigable water" issue has changed.  In addition, the USFS

8   contends that the administrative record is incomplete on the issue, and requests remand to allow the

9   USFS to develop the administrative record more fully.  The USFS opposes Sequoia Forestkeeper's

10  motion on all other issues.

11   In reply, Sequoia Forestkeeper opposes remand of the navigable water issue, arguing that this

12  Court must decide whether the USFS acted arbitrarily and capriciously based on the administrative

13  record at the time it existed when the USFS made its final administrative decision.  In addition, Sequoia

14  Forestkeeper reiterates its position that this Court erred on all issues presented in its reconsideration

15  motion.

16   Having considered the parties' arguments, declarations, and the administrative record, this Court

17  found this motion suitable for a decision without a hearing, vacated the March 10, 2011 hearing on this

18  motion pursuant to Local Rule 230(g).

19   **STANDARD OF REVIEW**

20   **Reconsideration**

21   The Court has discretion to reconsider and vacate a prior order. *Barber v. Hawaii*, 42 F.3d 1185,

22  1198 (9th Cir.1994); *United States v. Nutri-cology, Inc*., 982 F.2d 394, 396 (9th Cir.1992); *see also*, Fed.

23  R. Civ. P. 59(e). Motions to reconsider are committed to the discretion of the trial court. *Combs v. Nick*

24  *Garin Trucking*, 825 F.2d 437, 441 (D.C.Cir.1987); *Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir.1983)

25  (en banc).  A motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests

26  of finality and conservation of judicial resources." *Kona Enterprises v. Estate of Bishop*, 229 F.3d 877,

27  890 (9th Cir. 2000).

28   To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court

3

1   to reverse its prior decision. *Id.; see also, Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp.

2   656, 665 (E.D.Cal.1986), *affirmed in part and reversed in part on other grounds*, 828 F.2d 514 (9th

3   Cir.1987).  "A motion for reconsideration should not be granted, absent highly unusual circumstances,

4   unless the district court is presented with newly discovered evidence, committed clear error, or if there

5   is an intervening change in the controlling law." *389 Orange Street Partners v. Arnold*, 179 F.3d 656,

6   665 (9th Cir. 1999).

7       Motions for reconsideration are not the place for parties to make new arguments not raised in

8   their original briefs. *Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-6 (9th

9   Cir.1988). Nor is reconsideration to be used to ask the court to rethink what it has already thought.

10  *United States v. Rezzonico*, 32 F.Supp.2d 1112, 1116 (D.Ariz.1998). "A party seeking reconsideration

11  must show more than a disagreement with the Court's decision, and recapitulation of the cases and

12  arguments considered by the court before rendering its original decision fails to carry the moving party's

13  burden." *U.S. v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D. Cal.2001).

14                          **Review of Administrative Decision**

15      This Court's initial review of Sequoia Forestkeeper asserted claims pursuant to NEPA (counts

16  one and two) and NFMA (counts three and four) was limited.  Alleged violations of NEPA and NFMA

17  are subject to juridical review under the APA. *Blue Mtn. Biodiversity Project v. Blackwood*, 161 F.3d

18  1208, 1211 (9th Cir. 1998).  This Court reviews of an agency's actions pursuant to the differs, depending

19  on whether the issue was primarily factual or primarily legal.  *Price Rd. Neighborhood Ass'n. v. United*

20  *States DOT*, 113 F.3d 1505, 1508 (9th Cir. 1997).  After some discussion, the Court found that "[t]he

21  issues of this action are factual and legal in nature.; i.e., whether Fay Creek is a fishery or a navigable

22  water, and how much water flows through the diversion.  Accordingly, this Court shall apply an

23  "arbitrary and capricious" standard to its review of factual issues, but will consider pure questions of law

24  under the reasonableness standard." MSJ Order, pg. 11.

25      For disputes that are primarily factual, this Court "shall...set aside" agency action that is

26  "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or found to

27  be "without observance of procedure required by law." 5 U.S.C. §706(2).  Although the Court's review

28  is "searching and careful," the "standard is narrow." *Ocean Advocates v. United States Army Corps of*

                                           4

*Eng'rs*, 402 F.3d 846, 859 (9th Cir. 2005).  The arbitrary and capricious standard is "highly deferential, presuming the agency action to be valid and [requires] affirming the agency action if a reasonable basis exists for its decision."  *Indep. Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000) (quotations and citations omitted).  Under such deferential review, the Court may not substitute its judgment for that of the agency. *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 376 (1989); *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006).  Thus, the Court will not vacate an agency's decision under the "arbitrary and capricious" standard unless the agency:

> has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the produce of agency expertise.

*Nat'l Assn. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  On the other hand, a reviewing court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id*. (quotations and citations omitted).

When a dispute is primarily legal in nature, or concerns a threshold question of law, this Court applies the more lenient "reasonableness" standard. *Ka Makani 'O Kohala Ohana Inc. v. Dept. of Water Supply*, 295 F.3d 955, 959 (9th Cir. 2002).  Under this standard, the Court will uphold the agency's decision unless it is unreasonable. *Friends of the Earth v. Hintz*, 800 F.3d 822, 836 (9th Cir. 1986).

With these standards in mind, the Court turns to the parties' arguments.

## DISCUSSION

### Navigable Water Issue

Sequoia Forestkeeper argued that the USFS violated the CWA because it issued the SUP without requiring state certification that the diversion would not impact water quality in Fay Creek.  The NFMA requires the USFS to comply with the CWA, among other statutes.   Section 401 of the CWA requires every applicant for a federal license or permit which may result in a discharge into "navigable waters" to provide the licensing or permitting federal agency with certification that the project will be in compliance with specified provisions of the CWA, including State water quality standards ("Section 401 Certificate").  No 401 Certificate was issued by the State before the 2003 SUP re-issued.  Sequoia

1  Forestkeeper argues that USFS's failure to require Sellers to obtain a Section 401 Certificate from the

2  State of California was arbitrary and capricious, and violated the NFMA.

3  In its MSJ Order, this Court found that the USFS's failure to obtain a Section 401 Certificate did

4  not violate the NFMA, because Fay Creek is not a "navigable water" within the meaning of the CWA.

5  In its decision, the Court considered the reasoning of *Rapanos v. United States*, 547 U.S. 715 (2006),

6  in which the Supreme Court interpreted the term "navigable waters" as used in the CWA in a 4-4-1

7  plurality opinion.  The Court further considered the Ninth Circuit cases of in *N. Cal. River Watch v. City*

8  *of Healdsburg*, 457 F.3d 1023, 1029 (9th Cir. 2006) and *United States v. Moses*, 496 F.3d 984 (9th Cir.

9  2007), which recognized Justice Kennedy's opinion in *Rapanos* to be the "controlling rule of law."

10  Based upon these and other cases, this Court concluded that Justice Kennedy's "significant nexus" test

11  was the controlling rule of law.  Based on this standard, the Court found that Fay Creek was not a

12  "navigable water" under Justice Kennedy's "significant nexus" test.

13  Reconsideration of this issue is warranted because there appears to be an intervening change in

14  the controlling law.  The USFS points out that a recent Ninth Circuit opinion, published after this

15  Court's MSJ Order, makes clear that this Court may also consider the plurality opinion's interpretation

16  of the term "navigable water":

17  > In *City of Healdsburg*, 496, F.3d at 999-1000, the court found that Justice Kennedy's
18  > concurrence in *Rapanos* "provides the controlling rule of law for our case."  We did not,
   > however, foreclose the argument that the Clean Water Act jurisdiction may also be
   > established under the plurality's standard.
19

20  *N. Cal. River Watch v. Wilcox*, – F.3d –, 2011 WL 238292 *1 (9th Cir. 2011) (amending 620 F.3d 1075,

21  1089-90 (9th Cir. 2010) to include this language).  Indeed, the USFS now explains that it is the position

22  of the United States that CWA jurisdiction may be established under either of the two standards set forth

23  in *Rapanos*.  Having considered the case law, this Court agrees that both the plurality decision and

24  Justice Kennedy's "significant nexus" test may establish CWA jurisdiction.  Because this Court

25  erroneously rejected the *Rapanos* plurality decision,[3] reconsideration on this issue is granted.

26  Accordingly, this Court will reconsider the issue under the *Rapanos* plurality standard.

27  _____

28  [3] In its MSJ Order, this Court found that although Fay Creek "may qualify as a navigable water" under the plurality decision in *Rapanos*, the plurality definition was not controlling.  As explained herein, this conclusion was erroneous.

1    Whether the USFS was required to obtain a Section 401 Certificate turns on whether Fay Creek

2    is a "navigable water" within the meaning of the CWA.  The *Rapanos* plurality explained:

3        the phrase "the waters of the United States" includes only those relatively permanent,
         standing or continuously flowing bodies of water "forming geographic features" that are
4        described in ordinary parlance as "streams[,] . . . oceans, rivers, [and] lakes." The phrase
         does not include channels through which water flows intermittently or ephemerally, or
5        channels that periodically provide drainage for rainfall. The Corps' expansive
         interpretation of the "the waters of the United States" is thus not "based on a permissible
6        construction of the statute.

7    *Id*. at 732 (citations omitted).  At first blush, this definition of "navigable water" may appear to exclude

8    Fay Creek, because the evidence demonstrates that Fay Creek is not a "continuously flowing" body of

9    water.  As the plurality clarified, however: "By describing 'waters' as 'relatively permanent,' we do not

10   necessarily exclude streams, rivers, or lakes that might dry up in extraordinary circumstances, such as

11   drought. We also do not necessarily exclude seasonal rivers, which contain continuous flow during some

12   months of the year but no flow during dry months . . . ." *Id*. at 733 n.5.

13   Reconsidered under this analysis, Fay Creek qualifies as a navigable water under this definition.

14   Fay Creek flows seasonally, not "ephemerally."  The administrative record makes clear that Fay Creek

15   is a stream that flows throughout certain seasons of the year, even in its lower stretches, drying up in the

16   summer months.   The administrative record supports Sequoia Forestkeeper's argument that Fay Creek

17   is a "stream" that is "relatively permanent" under the *Raponos* plurality definition.  In addition, Sequoia

18   Forestkeeper correctly points out that the administrative record contains facts that Fay Creek flows into

19   the south Kern River, since it is characterized as a "tributary" of the south Kern River. *See* AR at 152

20   ("The headwaters to Fay Creek start on the southern end of the Kern Plateau, and drains into the South

21   Fork of the Kern River."); *see also*, AR at 128, 154, and Def. Answer, ¶12 (admitting that Fay Creek is

22   a tributary of the South Fork of the Kern River).  Under these facts, Fay Creek is a navigable water,

23   requiring the USFS to explore Section 401 Certification prior to the re-issuance of the SUP.

24   The USFS concedes that these facts appear in the administrative record, but argues that the

25   administrative record contains "significant factual inconsistencies" and is incomplete on this issue.

26   USFS requests that this Court vacate this portion of its MSJ Order and remand it to allow the agency to

27   develop the administrative record on this issue and to decide the issue in the first instance.

28   Sequoia Forestkeeper points out that although the USFS argues that the administrative record

7

1   contains "factual inconsistencies," the USFS fails to cite to the administrative record to support its

2   position.  In addition, Sequoia Forestkeeper opposes remand, arguing that since the administrative record

3   is complete, this Court must consider this issue on the administrative record as it existed at the time the

4   final administrative decision was made.  This Court agrees, for the reasons explained more fully below.

5           The USFS was required to determine whether a Section 401 Certification was required prior to

6   issuing the Sellers SUP.  33 U.S.C. §1341(a)(1).  The USFS concedes that "it did not decide whether

7   a Section 401 Certification [was] required" prior to its final administrative action.  Having considered

8   the administrative record, it appears that Fay Creek qualifies as a navigable water under the CWA to

9   require a Section 401 Certificate prior to the re-issuance of the SUP.  In reviewing the USFS'

10  administrative decision, this Court:

11          looks to the evidence the Forest Service has provided to support its conclusions, along
            with other materials on the record, to ensure that the Service has not, for instance, relied
12          on factors Congress did not intend it to consider, entirely failed to consider an important
            aspect of the problem, or offered an explanation that runs counter to the evidence before
13          the agency or is so implausible that it could not be ascribed to a difference in view or the
            product of agency expertise.
14

15  *Lands Council*, 537 F.3d at 987 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,

16  463 U.S. 29, 43 (1983) (internal quotations omitted).  Because the USFS failed to consider whether a

17  Section 401 Certificate was required prior to re-issuing the Sellers SUP, the USFS "failed to consider

18  an important aspect of the problem." *Id*.  Under these circumstances, this Court finds that the USFS

19  acted arbitrarily and capriciously when it issued the Sellers SUP without considering its obligations

20  under the CWA and without applying for a Section 401 Certificate.  For these reasons, this Court

21  MODIFIES its prior MSJ Order and judgment in part and GRANTS summary judgment in favor of

22  Sequoia Forestkeeper and against the USFS on this issue.

23                                      **Fisheries Issue**

24          This Court ruled that the USFS did not err to conclude that the portion of Fay Creek below the

25  diversion did not constitute a fishery.   Sequoia Forestkeeper challenges this Court's conclusion on a

26  number of grounds.  For the following reasons, this Court rejects Sequoia Forestkeeper's arguments.

27          Sequoia Forestkeeper argues that this Court erred by failing to consider the parts of the

28  administrative record it cited to support its position that Fay Creek is a fishery.  Sequoia Forestkeeper

                                              8

1   is mistaken, as this Court considered thoroughly all documents cited by the parties in their summary

2   judgment papers.  This Court cited and quoted at length in the MSJ Order those documents Sequoia

3   Forestkeeper argues were ignored.  Because the Court considered these documents, this Court rejects

4   Sequoia Forestkeeper motion on this ground.

5        Additionally, Sequoia Forestkeeper presents no new evidence or change of controlling law on

6   this issue.  Sequoia Forestkeeper impermissibly asks this Court "to rethink what it has already thought."

7   *Rezzonico*, 32 F.Supp.2d at 1116.  For this additional reason, reconsideration is inappropriate.

8        Moreover, Sequoia Forestkeeper's arguments ignore the Court's standard to review an

9   administrative order of an NFMA claim.  Although the Court's review is "searching and careful," the

10  "standard is narrow." *Ocean Advocates v. United States Army Corps of Eng'rs*, 402 F.3d 846, 859 (9th

11  Cir. 2005).  The arbitrary and capricious standard is "highly deferential, presuming the agency action

12  to be valid and [requires] affirming the agency action if a reasonable basis exists for its decision." *Indep.*

13  *Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000) (quotations and citations omitted).

14  Under such deferential review, the Court may not substitute its judgment for that of the agency. *Marsh*

15  *v. Or. Natural Res. Council*, 490 U.S. 360, 376 (1989); *Kern County Farm Bureau v. Allen*, 450 F.3d

16  1072, 1076 (9th Cir. 2006).  Despite these standards, Sequoia Forestkeeper argues that the USFS'

17  decision that Fay Creek is not a fishery below the diversion was arbitrary and capricious, because the

18  USFS' conclusion differed from that of other evidence in the administrative record.  For example,

19  Stanley Stephens ("Mr. Stephens"), a senior biologist with the California Department of Fish and Game,

20  wrote the USFS a letter in which he offered his opinion that "allowing the complete de-watering of Fay

21  Creek on the relatively short reach of national forest lands not only affects the fish, wildlife, and plants

22  there on federal lands, but also on a much longer reach of Fay Creek downstream of the Forest boundary

23  on private lands." AR at 124.   While Mr. Stevens' letter and other evidence support Sequoia

24  Forestkeeper's position, this Court may not substitute the USFS' opinion with its own, Sequoia

25  Forestkeeper's, or Mr. Stephens'.  Under the highly deferential standard, the Court considers whether

26  the USFS's position was supported by a reasonable basis.  As explained below, this Court did not err

27  to find that the USFS's opinion was formed on a reasonable basis.

28        The USFS's determination that Fay Creek was not a fishery below the diversion was supported

by the administrative record. The 2002 Fisheries Analysis, prepared by a USFS Acting Zone Hydrologist, after considered all of the surveys of Fay Creek conducted by USFS scientists, concluded: "Fay Creek has a permanent fishery above the diversion structure, but not below it." AR at 206. That conclusion was consistent with earlier surveys that while fish may have been present from time to time in the lower reaches of Fay Creek, the conditions, natural barriers, and low water flow of Fay Creek did not support an aquatic environment that "predominantly supports" fish year-round. For example, a 1988 survey also concluded "there is little evidence of there ever being enough water to support a resident fishery year round." AR at 153. Similarly, the 1974 survey considers that the Fay Creek is not a fishery and would not support an aquatic habitat. In addition, letters provided to the USFS by longtime residents of Fay Creek downstream of the diversion affirmed that Fay Creek typically "goes dry around July 4th and does not start again until Labor Day or later." AR at 49, 97. This Court did not err to hold that the USFS conclusion that the area below the diversion was not a fishery was not arbitrary and capricious, as it relied on the expertise of its hydrologist/biologist and was supported by the historical data. Accordingly, Sequoia Forestkeeper's reconsideration motion on this issue is DENIED.

### Documents Beyond Administrative Record

In its summary judgment motion, Sequoia Forestkeeper submitted, and relied on, documents outside of the administrative record. Specifically, Sequoia Forestkeeper submitted the declarations of Michael Klinkenberg, Ara Marderosian, Harold Simolke, and Daniel Christenson. Sequoia Forestkeeper also submits several documents attached as Exhibits A through F. Sequoia Forestkeeper argued that this Court could take judicial notice of these exhibits.

In its MSJ Order, this Court found Sequoia Forestkeeper's request for judicial notice of these extra-record documents to be unpersuasive. This Court noted that in an administrative review of an agency action, the Court generally restricts its review to the administrative record. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 943 (9th Cir. 2006). The Court reviews "the full administrative record that was before the [decision-maker] at the time he made his decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); 5 U.S.C. §706. The Court "normally refuse[s] to consider evidence that was not before the agency because 'it inevitably leads the reviewing court to substitute its judgment for that of the agency.'" *Id*. (quoting *Asarco, Inc. v. EPA*, 616 F.2d 1152,

1160 (9th Cir. 1980)).  The Court may permit submission of extra-record materials only in limited circumstances, including: (1) if it is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) "when the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter"; or (4) where there is an allegation of bad faith. *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (citations omitted).

Sequoia Forestkeeper argues that this Court erred by not ruling on its request for judicial notice. This Court generally does not address a request for judicial notice in its summary judgment decisions in its written orders.  Omission of reference to a request for judicial notice, an argument, a document or a paper should not to be construed as this Court's not considering the request, argument, document or paper. This Court reviewed, considered and applied the evidence and matters it deemed admissible, material and appropriate for summary judgment.  Although this Court did not so state in its order, this Court did consider the request for judicial notice, and implicitly rejected in part that request when it ruled to strike the extra-record evidence.[4]

As set forth above, this Court "normally refuse[s] to consider evidence that was not before the agency[.]"  *Ctr. for Biological Diversity*, 450 F.3d at 943.  This includes even those documents that may be judicially-noticeable.  This Court agreed with the USFS that Sequoia Forestkeeper failed to establish any of the limited circumstances in which the record may be supplemented.  In addition, this Court granted the USFS' motion to strike the extra-record exhibits, because the exhibits did not exist at the time decision was made to re-issue the Sellers SUP in 2003.  Based on this consideration, the Court rejected Sequoia Forestkeeper's request, finding that an attempt to supplement the record seven years after the decision was made to add new information was unwarranted.  *See Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) ("Were the federal courts routinely or liberally to admit new evidence when reviewing agency decisions, it would be obvious that the federal courts would be proceeding, in

---

[4] In its MSJ Order, this Court wrote: "Sequoia Forestkeeper does not explain how this Court can consider these extra-record documents in this motion." *Id*. at 9.  Sequoia Forestkeeper misconstrues this sentence as demonstrating that this Court did not consider its request for judicial notice.  Although Sequoia Forestkeeper addressed the Fed. R. Civ. P. 201 standards, Sequoia Forestkeeper neglected to argue that these extra-record documents could be considered in the limited circumstances as outlined in *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996).  This absence of analysis formed the basis of this Court's comment.

effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making. Here, the risks presented by the supplemental evidence are serious[.]"). This Court continues to find that consideration of these documents that did not exist at the time of the administrative review would be inappropriate and impermissible.[5] For these reasons, this Court denies Sequoia Forestkeeper's reconsideration motion on this ground for the declarations.

Moreover, this Court considered Sequoia Forestkeeper's request for judicial notice and reconsideration motion to be improper and untimely attempts to supplement the administrative record.[6] From the time it initiated this action, Sequoia Forestkeeper had over a year to prepare objections to the administrative record and to file appropriate motions to supplement the administrative record. In this Court's scheduling order, this Court addressed the issue of supplementing the administrative record, and ordered the parties to file "any motion challenging the sufficiency of the Administrative Record will be filed on or before March 9, 2010." By joint request, the Court amended the scheduling order to allow Sequoia Forestkeeper additional time to consider the administrative record and submit objections thereto. The administrative record in this action was filed on March 10, 2011. Thereafter, Sequoia Forestkeeper again requested a motion for an extension of time to file objections to the administrative record and to supplement it. That motion was granted. On April 30, 2010, Sequoia Forestkeeper filed a Motion to Compel Supplementation of the Record. Sequoia Forestkeeper's motion included only one document; namely, Appendix 31 of the Water Quality Control Plan for the Tulare Lake Basin. Sequoia Forestkeeper failed to move to supplement the administrative record as to the various exhibits or declarations submitted

---

[5] In the alternative, Sequoia Forestkeeper argues that the declarations were permissible to establish standing, although standing was not an issue before this Court.

[6] Notwithstanding these defects, this Court *sua sponte* considered whether the documents fit within the limited circumstances and were admissible, and consider admissible documents. Specifically, documents that helped this Court to understand technical terms. Sequoia Forestkeeper argues that this Court failed to take judicial notice of the provision of the Forest Plan that defines "fishery habitat," however, this Court considered the following in its MSJ Order:

> The Sequoia Forest Plan defines "fishery habitat" as "[s]treams, lakes, and reservoirs that support fishes."
> The Forest Service Manual defines cold water fisheries as "aquatic habitats" that "predominantly support" particular fish species. AR at 777 (this document is submitted outside of the administrative record).
> "Aquatic habitat" is defined as "environments characterized by the presence of standing or flowing water."
> The terms "predominantly" and "support" are not defined.

MSJ Order, p. 14.

1  with its summary judgment motion with one offending exception.[7]  The request for this Court to take

2  judicial notice of multiple extra-record documents and exhibits was untimely, failed to address the limited

3  and specific factors related to supplementing administrative records, and was an inappropriate attempt

4  to supplement the record through Fed. R. Civ. P. 201.  Accordingly, this Court denies the request for

5  judicial notice and reconsideration motion on the alternative grounds that it was an untimely and

6  inappropriate request.

7       For these reasons, this Court denies Sequoia Forestkeeper's motion for reconsideration of this

8  Court's refusal to consider its extra-record documents.

9                                              **Relief**

10      This Court granted in part Sequoia Forestkeeper's original summary judgment motion, finding

11  that because the USFS failed to demonstrate that it made a "reasoned decision" to re-issue the SUP

12  "based on all of the relevant factors and information," the re-issuance was "arbitrary and capricious." *Id*.

13  (citing *Marsh*, 490 U.S. at 378); *see also*, 40 C.F.R. 1505.1.  "When an agency decides to proceed with

14  an action in the absence of an EA or EIS, the agency must adequately explain its decision." *Alaska Ctr.*,

15  189 F.3d at 859.  "[W]hen an agency has taken action without observance of the procedure required by

16  law, the action will be set aside." *Sierra Club*, 510 F.3d at 1023 (citing *Idaho Sporting Cong., Inc. v.*

17  *Alexander*, 222 F.3d 562, 567-68 (9th Cir. 2000).  Having found an additional basis on which the USFS

18  acted arbitrarily and capriciously, this Court grants Sequoia Forestkeeper's motion to reconsider this

19  Court's denial of injunctive relief.  For the following reasons, this Court finds that the administrative

20  agency action must be set aside.

21      The Court may only grant a preliminary injunction "upon a clear showing that the plaintiff is

22  entitled to such relief." *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 375, 172 L. Ed. 2d 249 (2008).  "Plaintiffs

23  seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they

24  are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips

25

26      [7]This Court denied Sequoia Forestkeeper's motion to supplement the administrative record to include Appendix 31.
   Notwithstanding that order, and without seeking reconsideration, Sequoia Forestkeeper submits Appendix 31 as one of the
27  exhibits it contends is appropriate for judicial notice.  For the reasons contained in the order denying Sequoia Forestkeeper's
   motion to compel supplementation of the administrative record, that request is denied.  Appendix 31, as well as other exhibits
28  submitted by Sequoia Forestkeeper, were appropriately excluded from the record.  In addition, any request related to
   Appendix 31 is untimely.

1  in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577

2  F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter*, 129 S.Ct. at 374).  In considering the four factors, the

3  Court "must balance the competing claims of injury and must consider the effect on each party of the

4  granting or withholding of the requested relief." *Winter*, 129 S.Ct. at 376 (quoting *Amoco Co. v. Vill. of*

5  *Gambell, Alaska*, 480 U.S. 531 542 (1987)); *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d

6  644, 651 (9th Cir. 2009).

7                                    **Likelihood of Success**

8          This Court found that the USFS violated both the NFMA, in part, and NEPA, in part.

9  Specifically, this Court found that the USFS violated NEPA, because it failed to consider some comments

10  based on its erroneous conclusion that it had no legal authority to place conditions that would restrict

11  water flowing through the diversion.  In addition, the USFS failed to consider whether a Section 401

12  Certificate was required before re-issuing the Sellers SUP.  Accordingly, Sequoia Forestkeeper has

13  established the likelihood of the merits on some of its claims.

14                          **Irreparable Harm Absent Injunctive Relief**

15          Sequoia Forestkeeper argues that in "the NEPA context, irreparable injury flows from the failure

16  to evaluate the environmental impact of a major federal action." *Sierra Club*, 510 F.3d at 1034.  Indeed,

17  "environmental injury, by its nature, can seldom be adequately remedied by money damages and is often

18  permanent or of long duration, *i.e.*, irreparable." *Id*. (quoting *Amoco Prod. Co. v. Village of Gambell*, 480

19  U.S. 531, 545 (1987)).  Nevertheless, a violation of NEPA "does not automatically require the issuance

20  of an injunction." *Id*.  This Court disagrees with the USFS's claim that any NEPA violation is merely a

21  "trivial violation" pursuant to 40 C.F.R. §1500.3.  Considered with the USFS's additional failure to seek

22  a Section 401 certificate, the "proposed project may significantly degrade some human environmental

23  factor." *Nat'l Parks & Conservation Ass'n*, 241 F.3d at 737.  Based on these considerations, this factor

24  favors injunctive relief.

25                                      **Public Interest**

26          The public interest favors injunctive relief.  "[A]llowing a potentially environmentally damaging

27  program to proceed without an adequate record of decision runs contrary to the mandate of NEPA" and

28  contrary to the public interest. *Sierra Club*, 510 F.3d at 1033.  "The preservation of our environment, as

14

1  required by NEPA and NFMA, is clearly in the public interest." *Earth Island Inst. v. U.S. Forest. Serv.*,

2  351 F.3d 1291, 1308 (9th Cir. 2003).

3  **Balance of the Hardships**

4       The purpose of a a preliminary injunction is to preserve the status quo if the balance of equities

5  so heavily favors the moving party that justice requires the court to intervene to secure the positions of

6  the parties until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451

7  U.S. 390, 395, 101 S.Ct. 1830 (1981). "Status quo" means the last uncontested status that preceded the

8  pending controversy. *See, GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). Here,

9  the status quo would be to allow Sellers to continue to divert water through the diversion. Water has been

10  flowing through the diversion for over 100 years. Sequoia Forestkeeper seeks a mandatory injunction

11  that "goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.'"

12  *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980) (quoting *Martinez v. Mathews*, 544 F.2d

13  1233, 1243 (5th Cir. 1976)); *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873,

14  878-79 (9th Cir. 2009). The balance of the equities tips against the issuance of the injunctive relief

15  sought. *See, Sierra Club*, 510 F.3d 1034 (recommending injunction to be limited to those projects that

16  have not yet been approved). Because of the technical issues related to interrupting a diversion that has

17  been in place in 1890, this Court must remand this issue to the administrative agency to consider in the

18  first instance and to fashion an appropriate remedy to address the issue raised once the SUP is vacated.

19  **Conclusion**

20       Sequoia Forestkeeper has established likelihood of success on the merits of its claims and on the

21  issue of irreparable harm. In addition, the public interest favors injunctive relief. The USFS action to

22  re-issue the Sellers SUP violated both NEPA and the NFMA. The USFS should have considered whether

23  it had authority to place conditions on the water flow, should have considered whether a Section 401

24  Certificate was required, and should have applied for a Section 401 Certificate prior to re-issuing the

25  Sellers SUP. Because the Sellers SUP was re-issued contrary to NEPA and NFMA, this Court

26  VACATES the Sellers' SUP. Because of the complex issues related to injunctive relief, however, this

27  Court REMANDS the issue of injunctive relief to the administrative agency.

28  ///

**ORDER**

For the foregoing reasons, this Court:

1.  GRANTS in part and DENIES in part Sequoia Forestkeeper's reconsideration motion;

2.  MODIFIES in part its MSJ Order (Doc. 80) and its December 3, 2010 judgment (Doc. 82);

3.  GRANTS judgment in favor of Sequoia Forestkeeper and against the USFS on Sequoia Forestkeeper's fourth cause of action on the issue of whether the USFS acted arbitrarily and capriciously in failing to obtain a Section 401 Certificate prior to re-issuing the Sellers SUP;

4.  SETS ASIDE the Sellers SUP; and

5.  REMANDS this action to the administrative agency for further proceedings consistent with this opinion and order.

IT IS SO ORDERED.

Dated:    **March 14, 2011**                          **/s/ Lawrence J. O'Neill**
                                                   UNITED STATES DISTRICT JUDGE